UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY JO PERKINS,

        Plaintiff,                                 Case No. 1:11-cv-131

v.                                                   HON. JANET T. NEFF

SHENANDOAH LIFE INSURANCE COMPANY,

        Defendant.
_____/

## OPINION

Plaintiff Mary Jo Perkins filed this benefits case pursuant to the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, seeking reinstatement of her long-term disability (LTD) benefits by Defendant Shenandoah Life Insurance Company. Pending before the Court are the parties' cross-motions for judgment on the administrative record (Pl. Mot., Dkt 23; Def. Mot., Dkt 26). Plaintiff did not file a response to Defendant's motion, but Defendant filed a response to Plaintiff's motion (Dkt 27). The Administrative Record (AR) has also been filed (Dkt 25). Having carefully considered the parties' briefs and the Administrative Record, the Court concludes, for the reasons that follow, that Plaintiff's motion should be denied and Defendant's motion granted.

### I. BACKGROUND

Plaintiff worked as a Registered Nurse for various healthcare institutions for approximately 14 years, most recently working as an Emergency Room Staff Nurse for Foote Health System until

May 2, 2005, when she stopped working primarily because of neck pain (AR 235, 952, 1048, 1088).[1]
When her short-term disability benefits were about to expire, Plaintiff submitted a claim for LTD benefits pursuant to an employee-sponsored welfare benefits plan under the Policy issued to Foote Health System (*id.* 1218-19; Policy, AR 1220-1251). Channing M. Smith, M.D., Plaintiff's family doctor, submitted an Attending Physician's Statement dated October 24, 2005, indicating diagnoses of radicular cervical pain and fatigue, and indicating that Plaintiff was unable to lift more than 20 pounds (*id.* 1090-92). Dr. Channing Smith classified Plaintiff with "[m]oderate limitation of functional capacity; capable of clerical/administrative (sedentary) activity (60-70%)" (*id.* 1091).

On December 20, 2005, Defendant approved Plaintiff's claim for benefits, effective October 30, 2005, under the "own occupation" definition of disability of the Policy, to wit: "Total Disability means the Insured is unable to perform all the Material and Substantial Duties of his Regular Occupation due to Sickness or Injury and Insured is not working in any occupation or Insured is working but due to Sickness or Injury is earning less than 20% of his monthly Earnings" (*id.* 958-61, 1228, 1233). Plaintiff was paid LTD benefits for 24 months on the basis of disability from her own occupation (*id.* 235). Plaintiff, who had a bachelor's degree in nursing, completed some course work toward a Master's program in nursing while on disability (*id.*).

As explained in Defendant's December 20, 2005 letter to Plaintiff, the Policy provides that the disability definition is initially applicable to the claimant's "own occupation," but the disability definition changes after 24 months to the "any occupation" standard, which provides that "beyond

---

[1]The pertinent facts are summarized here with reference to the documents within the Administrative Record. *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998) (Gilman, J., concurring) (district court review generally limited to administrative record).

24 months of disability, the greatest extent of work Insured is able to do in any occupation for which Insured is reasonably fitted by education, training or experience" (AR, 959, 1226).

On October 4, 2007, Defendant contacted Dr. Channing Smith regarding Plaintiff's functional abilities (*id.* 657-58). Dr. Channing Smith responded on October 5, 2007 that Plaintiff was capable of performing work at both the sedentary and light capacity levels (*id.*).

Additionally, Defendant's Rehabilitation Case Manager conducted an Employability Analysis Report on October 12, 2007 (AR 597-640). The Employability Analysis Report indicated, in pertinent part, that Plaintiff possessed the transferable skills required to perform in fourteen occupations considered to be viable opportunities within the national economy, including School Nurse, Health Services Coordinator, Medical Record Coder, and Cardiovascular Technologist and Technician (*id.* 597-600).

By letter dated October 23, 2007, Defendant terminated payment of LTD benefits to Plaintiff as of October 29, 2007, informing her that "[t]he weight of the evidence in your claim file supports your ability to perform any occupation that you are reasonably fitted by education, training or experience" (AR 590-93). Defendant indicated that Plaintiff could either appeal its decision or she could send Defendant additional information, specifically, the medical records from her psychiatrist, Khawaja H. Rehman, M.D., which were not previously submitted and which Defendant indicated were necessary for clarification of Plaintiff's medical condition under the Policy's mental illness limitation (*id.*).

Subsequently, Dr. Rehman submitted information to Defendant regarding Plaintiff's mental health treatment (AR 1181). Dr. Rehman indicated that Plaintiff's psychiatric medications had side effects of intermittent poor memory and fatigue, but he supported Plaintiff's return to part-time work, with a gradual return to full-time work (*id.* 559, 571, 1177). However, Dr. Rehman indicated

3

that Plaintiff was then unable to work on a full-time basis due to symptoms of intermittent anxiety, poor stress tolerance, and Plaintiff's lack of confidence and perception that she was not employable because of the medications she was taking (*id.* 1177).

Thereafter, by letter dated March 21, 2008, Defendant overturned its decision to terminate her LTD benefits (AR 538). Defendant determined, based upon further review of Plaintiff's claim file, including the receipt of the additional information, that Plaintiff met the definition of Total Disability under the Policy's Mental Nervous Provision (*id.*). Plaintiff's benefits were reinstated effective October 30, 2007, with a maximum expiration date of October 30, 2009, because the Policy limited benefits related to disabilities due to mental illness to a period "up to 24 months" (*id.* 538-39). Further, because her psychiatrist confirmed that she should attempt a return to part-time work, Defendant arranged for Plaintiff to receive vocational rehabilitation and referred Plaintiff for job placement services (*id.* 544-48).

In April 2008, Plaintiff began a part-time position with The American Cancer Institute; however, Dr. Rehman re-examined Plaintiff shortly after she secured the past-time employment and revoked his prior part-time work release (AR 1161). Although the recent Vocational Summaries indicated that Plaintiff was demonstrating at a higher functioning level, the vocational rehabilitation efforts were terminated because of Dr. Rehman's revocation of his release (*id.*).

On May 14, 2009, Dr. Channing Smith sent Defendant a letter indicating his belief that Plaintiff is "currently disabled due to her physical conditions," specifically, that Plaintiff's chronic pain limits her ability to effectively perform basic activities of daily living (AR 414). Dr. Channing Smith opined that Plaintiff was not capable of working "in any job on a full or part-time basis" (*id.*).

Nonetheless, on October 21, 2009, Dr. Channing Smith completed a Physical Capacities Evaluation Form, indicating that Plaintiff was capable of sitting for 2 hours at a time during a 10-

4

hour day, standing for 30 minutes at a time or 2 hours cumulatively, and walking for 30 minutes at a time or 1 hour cumulatively (AR 277). Dr. Channing Smith also indicated that Plaintiff was capable of lifting and carrying up to ten pounds on a "constant" basis, up to 20 pounds "frequently," and up to 50 pounds "occasionally" (*id.*). Dr. Channing Smith indicated that Plaintiff was not capable of climbing, stooping, kneeling, crouching or crawling but could occasionally drive, balance, and reach (*id.*). Last, Dr. Channing Smith indicated that Plaintiff had no environmental restrictions and could "constantly" use her hands to perform gross motor and fine motor skills and sense temperatures and textures (*id.* 278). Dr. Channing Smith noted that "[Plaintiff] feels she would have trouble functioning on these meds" (*id.*).

With Plaintiff's Mental Nervous benefit period about to expire, Defendant referred Plaintiff's file for an independent peer physician review to re-evaluate her physical restrictions and limitations. Richard Kaplan, M.D., board certified in Physical Medicine and Rehabilitation, reviewed Plaintiff's nearly 400 pages of medical records and information and issued a report dated November 24, 2009 (AR 255-263). Dr. Kaplan acknowledged that "some degree of impairment" would be expected based on Plaintiff's multilevel cervical fusion in 2005, but he opined that the records contained "no physical rehabilitation diagnosis which can explain that degree of impairment" that would result in Plaintiff's failure to work in over four years (*id.* 259-60). He opined that a return to work would "likely be therapeutic" with respect to Plaintiff's conditions of obesity and sleep apnea (*id.* 260).

Dr. Kaplan concurred with the physical restrictions indicated by Dr. Channing Smith on October 20, 2009, noting that it was "unclear why Dr. Smith wrote that the claimant perceives she has side effects from medications yet has not documented any clear effort to quantify those effects" (AR 261). Included in Dr. Kaplan's Peer File Review was a log of the times Dr. Kaplan left messages with Plaintiff's treating providers to discuss Plaintiff's conditions and treatments; his

5

messages were not returned (*id.* 262).  Based on Plaintiff's medical records, Dr. Kaplan concluded that Plaintiff was capable of returning to work and recommended "temporary restrictions/limitations for an initial three month return to work period" (*id.* 262).

On December 23, 2009, Defendant's Rehabilitation Case Manager completed a new Employability Analysis Report based on the information in Dr. Kaplan's evaluation and in Dr. Channing Smith's functional assessment (AR 234-42).  The restrictions and limitations indicated by both physicians corresponded to a "Medium" work capacity (*id.* 234).  The new Employability Analysis Report indicated that Plaintiff owned a personal computer, had an email address, and was proficient in the Microsoft Word program (*id.* 235).  The new Employability Analysis Report indicated that Plaintiff possessed the capabilities to perform in two types of occupations (Stress Test Technician and Cardiac Monitor Technician) considered to be viable opportunities within the national economy (*id.* 236).

By letter dated January 25, 2010, Defendant terminated Plaintiff's LTD benefits (AR 218-222).  Defendant determined that the evidence submitted in support of Plaintiff's claim did not establish that she met the "any occupation" definition of Total Disability (*id.* 218).  Rather, according to Defendant, Plaintiff was "capable of sustaining a Sedentary or Light Level of Work for an eight (8) hour day equating to a forty (40) hour work week" (*id.* 220).

Plaintiff timely appealed and submitted updated medical records for consideration, including a March 10, 2010 letter from Dr. Channing Smith, explaining that he completed the Physical Capacities Evaluation Form based on Plaintiff's reports that she "is stiff when she gets up in the morning, sometimes lasting 1-2 hours" and is "stiff throughout the day," suffering from a "tremendous amount of pain" (AR 164).

Defendant sent Plaintiff's file for a new independent peer physician review by Gerry Smith, M.D., also board certified in Physical Medicine and Rehabilitation. Dr. Gerry Smith issued a report dated April 23, 2010 and a supplement dated May 4, 2010 (AR 120-27, 176). Dr. Gerry Smith contacted Plaintiff's treating physician, Dr. Channing Smith, to discuss Plaintiff's condition (*id.* 126). Dr. Channing Smith admitted to Dr. Gerry Smith that Plaintiff "probably" could work at a sedentary level if allowed to change positions "semi-frequently" (*id.*). Reviewing the sum of medical records and information provided, Dr. Gerry Smith similarly opined that "the claimant is capable of working at a sedentary level if allowed to change positions for comfort" (*id.* 127). Dr. Gerry Smith opined that "the documented physical exam findings are not impressive and certainly do not support inability to work from a physical standpoint" (*id.* 126).

Defendant also sent Plaintiff's file for an independent peer physician review by Maureen Smith Ruffell, M.D., board certified in Psychiatry. Dr. Ruffell issued a report dated April 23, 2010 (AR 128-44). Dr. Ruffell opined that her telephone conversation with Dr. Rehman about Plaintiff's condition and treatment as well as the written materials provided to her gave reason "to question the claimant's motivation for work return" (*id.* 142-43). Dr. Ruffell reported that Dr. Rehman told her he would have "no objection if the claimant wanted to return to occupational functioning if she were motivated to do so despite her symptoms" (*id.* 143). According to Dr. Ruffell, the written materials also support that "the claimant has functionality above what she claims, i.e., despite the claim of sedating medication that precludes workplace activity, she is capable of driving a vehicle while talking on her cell phone and she provides care for 3 children. She runs errands and in 2008 she participated in a rehabilitation program that included applying for positions that she was successful in winning. There are two references in the written information to the claimant traveling for vacations. Surprisingly, she reportedly told the . . . rehabilitation counselor that she planned to

7

return to work as a nurse once her case with the disability insurer was settled" (*id.*). Dr. Ruffell concluded that Plaintiff's mental/emotional symptoms are not of such severity to preclude Plaintiff from working (*id.* 143).

On April 29, 2010, Defendant's Rehabilitation Case Manager completed an Addendum to the December 23, 2009 Employability Analysis Report (AR 108-114), indicating that Plaintiff possessed the transferable skills required to perform in two occupations (Cardiac Monitor Technician and Skip Tracer) considered to be viable opportunities within the national economy (*id.* 109).

By letter dated May 13, 2011, Defendant informed Plaintiff that its Appeal Unit had conducted an independent review of her claim, i.e., a review by individuals other than those who made the original decision to terminate her benefits and without deference to the original decision (AR 61-68). The Appeal Unit determined that the documentation on file, in addition to the subsequent information received, supported the prior adverse benefit determination (*id.* 61). Specifically, the Appeal Specialist authoring the May 13, 2011 letter indicated that

> The medical information provided by your own providers does not corroborate your report of limitations in function preventing you from performing occupational activities at least at a level of sedentary physical demands, and possibly greater. Our assessment of the information provided by your physicians has been confirmed by a means of review of your records with a variety of specialities, including the assessment of a previously independent physician, and reviews obtained specifically in the course of this appeal. In addition, our assessment of your functional abilities was also corroborated by another review of the previous employability analysis, which identified additional alternate occupations for which you qualified. The record ... no longer corroborates that you continue to satisfy the policy definition of Disability and as such, we must maintain the initial claim decision to terminate your request for continued LTD benefits beyond January 24, 2010.

*Id.* 68. Plaintiff initiated this case against Defendant in this Court on February 4, 2011.

## II. ANALYSIS

A.   Standard of Review

The standard of review for ERISA claims is well established and not disputed by the parties in this case. Where the insurance plan administrator is vested with discretion to interpret the plan, the court reviews the administrator's denial of benefits under the arbitrary and capricious standard. *DeLisle v. Sun Life Assurance Co. of Canada*, 558 F.3d 440, 444 (6th Cir. 2009). "Though highly deferential, this standard nevertheless requires 'some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues.'" *Curry v. Eaton Corp.,* 400 F. App'x 51, 57 (6th Cir. 2010) (quoting *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)). Under that standard, the court will "uphold the administrator's decision 'if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006) (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)), *aff'd* 554 U.S. 105 (2008).

B.   Discussion

Plaintiff proffers three arguments in support of her conclusion that Defendant's determination to terminate her LTD benefits was arbitrary and capricious, none of which is persuasive on this record.

1.   *Treating Physician's Opinion*

First, Plaintiff argues that the adverse benefits decision was "based upon the faulty opinion of the non-examining medical reviewer which the insurer retained" (Pl. Mot., Dkt 23 at 14-16). According to Plaintiff, "[t]he only way to reach the conclusion reached by the defendant is to take every reasonable inference in its own favor, and ignore the experienced and personal evidence of the claimant's treaters" (*id.* at 16).

9

Defendant responds that it considered the opinions of Plaintiff's treating physicians and concluded that they failed to offer clinical findings to support Plaintiff's claim of disability (Def. Mot., Dkt 26 at 23). According to Defendant, Plaintiff's own treating physicians affirmatively indicated that she is capable of performing a sedentary job with appropriate physical restrictions and limitations (*id.*).

In *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003), in holding that the Social Security disability program's presumption in favor of treating physicians did not apply to ERISA benefit plans, the Court indicated that neither consulting nor treating physicians' reports should be accorded routine deference. 538 U.S. at 832. The Court noted that "if a consultant engaged by a plan may have an 'incentive' to make a finding of 'not disabled,' so a treating physician, in a close case, may favor a finding of 'disabled.'" *Id.*

Here, both the consulting and treating physicians determined that Plaintiff was capable of working at a sedentary occupation, with certain restrictions and limitations. Although Plaintiff claims that she is still unable to work at even a sedentary occupation due to her ongoing complaints of neck pain and medication side effects, the quality and quantity of the medical evidence and the opinions on both sides of the issue support the decision that she did not satisfy the Policy's disability definition.

2.   *Conflict of Interest*

Plaintiff also briefly argues that Defendant is "subject to the conflict of interest" (Pl. Mot., Dkt 23 at 14-16). Defendant rejects the proposition that its review was hampered by any conflict of interest, emphasizing that conflict of interest is but one factor in this Court's review and that "even this one factor should be given little weight because Shenandoah's decision was based upon

10

a full review of the entire Administrative Record and there is no showing that Shenandoah's review was improperly influenced by the structural conflict of interest" (Def. Mot., Dkt 26 at 20).

A conflict of interest exists where, as here, a plan administrator both evaluates claims for benefits and pays benefits claims. *Glenn*, 554 U.S. at 112. However, the Sixth Circuit Court of Appeals has rejected the argument that "the apparent conflict of interest that exists when an administrator both decides whether an employee is eligible for benefits and pays those benefits requires the conclusion that the administrator *necessarily* has a conflict in a specific case." *Curry v. Eaton Corp.*, 400 F. App'x 51, 58 (6th Cir. 2010) (citing *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 165 (6th Cir. 2007)). Rather, the court "looks to see if there is evidence that the conflict in any way influenced the plan administrators' decision." *Hunter v. Life Ins. of N. Am.*, 437 F. App'x 372, 376 (6th Cir. 2011). "[C]onflicts are but one factor among many that a reviewing judge must take into account." *Glenn*, 554 U.S. at 117.

Here, Plaintiff does not reference, and this Court's review of the record simply does not reveal, any evidence that the conflict influenced the plan administrators' decision in this case. Rather, the record supports the conclusion that Defendant reached its decision based on a full review of the medical evidence, the opinions on both sides, and the evidence in the claim file of Plaintiff's own activities.

3. *Misapplication of Policy Terms*

Last, Plaintiff argues that Defendant misapplied the terms of the Policy. According to Plaintiff, the Policy requires (1) "an inability to perform all of the material and substantial duties of her regular occupation," and (2) "that the claimant is not working, or is earning less than 20 % of her previous monthly earnings" (Pl. Mot., Dkt 23 at 16). Plaintiff's argument overlooks the fact that 24 months after the end of the Elimination Period, as set forth above, the disability definition

changes from a claimant's "own occupation" to the "any occupation" standard (AR 58). Plaintiff's argument does not reveal any misapplication of the Policy by Defendant, but her own misunderstanding of the Policy terms.

In sum, reviewing the evidence and decision-making process as a whole and weighing the factors discussed above, the Court upholds Defendant's decision as the result of a deliberate, principled reasoning process and one that is supported by substantial evidence in the record. "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998) (internal quotation marks and citation omitted).

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Administrative Record (Dkt 23) is denied, and Defendant's Motion for Judgment on the Administrative Record (Dkt 26) is granted. An Order consistent with this Opinion will issue.

DATED: December 13, 2011                    /s/ Janet T. Neff
                                            JANET T. NEFF
                                            United States District Judge